UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------

MANSOOR HAMOUD HADWAN,

             Plaintiff,

             -against-

UNITED STATES DEPARTMENT OF
STATE and UNITED STATES
EMBASSY, SANA'A, YEMEN.

             Defendants.
------------------------------------------------

17cv578

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Mansoor Hamoud Hadwan seeks leave to conduct discovery and supplement the administrative record in this mandamus action. (ECF No. 30) Hadwan challenges the United States Department of State's decision to revoke his U.S. passport and U.S. Consular Report of Birth Abroad ("CRBA"), and its denial of his application for a direct return passport permitting him to attend a revocation hearing. For the reasons that follow, Hadwan's motion is denied.

BACKGROUND

        This action arises from the State Department's revocation of Hadwan's U.S. passport and CRBA. In June 2013, Hadwan traveled to the United States Embassy in Sana'a, Yemen to apply for immigration benefits on behalf of his family. (Am. Pet., ECF No. 22 ("Pet."), ¶ 12.) At that time, Embassy officials confiscated his passport and CRBA. (Pet. ¶ 13.) Despite his inability to speak or write English, Hadwan alleges that Embassy officials conditioned the return of his passport and CRBA on his completion of a number of forms. (Pet. ¶¶ 14–15.) Hadwan executed the forms on the belief that doing so would facilitate the return of

his passport and CRBA. (Pet. ¶ 17.) After doing so, Hadwan claims he was told that the documents would be sent to him. (Pet. ¶ 20.)

However, in March 2014, Embassy officials informed Hadwan that his passport and CRBA had been revoked. (Pet. ¶ 23; Administrative Record, ECF No. 19 ("Record"), at US 0003.) According to Hadwan—and unbeknownst to him at the time—the forms he executed included admissions that his biological father was not a U.S. citizen and that he had lied on his passport and CRBA applications. (Record at US 0003; Pet. ¶ 17.) Hadwan claims these statements were coerced and that he did not understand what he was signing. (Pet. ¶¶ 18, 19, 24.) Hadwan retained an attorney and challenged the revocation of his citizenship documents. (Pet. ¶ 25.)

In August 2014, the State Department convened a revocation hearing, but Hadwan failed to appear because he was denied a one-time passport to attend that hearing. (Pet. ¶¶ 26–29.) Hadwan's attorney appeared on his behalf, arguing that Hadwan did not sign the form voluntarily and questioning why anyone would go to the Embassy solely to admit to a fraud. (See Record at US 0094–114.) The Government countered that the statement was voluntary and noted that the document stated that it "was read to me in Arabic and I understood the contents completely." (Record at US 0109–10.)

In March 2015, the State Department hearing officer found that Hadwan understood the documents he was asked to sign because his sworn statement said so. (Record at US 0133–34.) Accordingly, the State Department found that Hadwan admitted to supplying false information in his passport and CRBA applications and affirmed their revocation. (Record at US 0133–34.)

Based on the revocation of these citizenship documents, Hadwan commenced this action under the Mandamus Act and the Administrative Procedures Act ("APA").

DISCUSSION

Hadwan seeks to supplement the administrative record with extra-record evidence—i.e., evidence outside of or in addition to the administrative record—concerning "the implementation of the State Department's proxy denaturalization program and consulate decisions . . . specific to [ ] Hadwan . . . ." (Hadwan's Ltr. dated Dec. 22, 2017, ECF No. 30 ("Mot."), at 6.) Hadwan contends that the administrative record is "devoid of any record of how and why the Department of State decided that Mr. Hadwan was not who he purported to be." (Mot. at 3.) Moreover, Hadwan argues that the administrative record "fails to establish the policies and procedures of the proxy denaturalization program," and omits the "illegal and coercive interrogation of [ ] Hadwan [by] agency employees" and the "multiple interviews conducted pri[o]r to the coercion of [Hadwan's] statement." (Mot. at 3.) In sum, Hadwan seeks discovery regarding his claim that the State Department routinely strips passports from American citizens in Yemen.

The Government counters that Hadwan has not "made a 'strong showing' or demonstrated a particularized need for the extra-record discovery . . ., nor has he demonstrated the existence of any of the narrow and rare circumstances under which discovery may be appropriate against the government in an APA review case." (Gov't Ltr. dated Jan. 4, 2018, ECF No. 31 ("Opp."), at 3.) The Government argues that in making his discovery request, Hadwan "merely speculates as to the existence of other materials on which the agency relied in making the administrative determination but which are not included in the administrative record." (Opp. at 3.)

On February 14, 2018, Hadwan supplemented his letter motion. (Hadwan's Ltr. dated Feb. 14, 2018, ECF No. 33 ("Supp. Mot.").) Hadwan now argues that because his attorneys received documents from the administrative record of another U.S. citizen whose passport was revoked at the Embassy in Sana'a under similar circumstances, those documents must also have been relied on by the State Department in Hadwan's case. (Supp. Mot. at 1.) Hadwan bases his argument on a records certification in Ali v. Pompeo, 16-cv-03691 (E.D.N.Y.), which purportedly reveals that certain documents not in Hadwan's Administrative Record are routinely relied on by the State Department in these types of proceedings. (Supp. Mot. at 1.) The Government counters that Hadwan has failed to demonstrate that the same documents were considered by State Department decision makers here. (Gov't Ltr. dated June 13, 2018, ECF No. 39 ("Supp. Opp."), at 1.) The Government also points out that the records certification in Ali actually states that the documents "were before" the agency, not that they are "considered and relied upon" by the agency as a matter of course. See Ali v. Pompeo, 2018 WL 2058152, *3 (E.D.N.Y. May 2, 2018). (See also Supp. Opp. at 1.)

"Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997). "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court. The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743–44 (1985) (quotation marks and citations omitted).

"It is the province of the agency to compile and submit the administrative record for review by the Court, and common sense dictates that the agency determines what constitutes

4

the whole administrative record because it is the agency that did the considering, and that therefore is in a position to indicate initially which of the materials were before it—namely, were directly or indirectly considered." Comprehensive Cmty. Dev. Corp. v. Sebelius, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012) (quotation marks and citations omitted). Moreover, in instances where supplementation of the record is required, it is typically accomplished by remand to the agency, not through court-supervised discovery. Fla. Power & Light, 470 U.S. at 744 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

"Requests by a party to put materials before the Court that are outside the administrative record filed by the agency fall into two distinct categories." Sebelius, 890 F. Supp. 2d at 309. First, "the party may seek to show that materials exist that were actually considered by the agency decision-makers but are not in the record as filed." Sebelius, 890 F. Supp. 2d at 309. This requires rebutting the presumption of administrative regularity and that any omitted documents had been "before the agency decisionmaker," not just "somewhere within the agency." Sebelius, 890 F. Supp. 2d at 309.

Second, a party may seek extra-record evidence where "there has been a strong showing in support of a claim of bad faith or improper behavior on the part of the agency decision makers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's decision." Hoffman, 132 F.3d at 14. "What constitutes a strong preliminary showing . . . is a matter that the courts have been reluctant to define, preferring in the main simply to declare that on the facts of a given case, the showing has not, or occasionally has, been made." Tummino v. Von Eschenbach, 427 F. Supp. 2d 212, 230 (E.D.N.Y. 2006).

5

Making such a showing "is no small hurdle." Ali, 2018 WL 2058152, at *5. Courts will not "ascribe . . . nefarious motives to agency action as a general matter." Estate of Landers v. Leavitt, 545 F.3d 98, 113 (2d Cir. 2009). As such, a "strong showing" cannot be made through "[n]aked assertions of bad faith." Ali, 2018 WL 2058152, at *5 (quoting Citizens Against Casino Gambling in Erie Cty. v. Stevens, 814 F. Supp. 2d 261, 265 (W.D.N.Y. 2011)). Nor can one be made by bald claims of discrimination or "guilt by association." See Noroozi v. Napolitano, 905 F. Supp. 2d 535, 547 (S.D.N.Y. 2012) (declining to consider evidence outside the administrative record where petitioner made bare assertions of discrimination and guilt by association to establish bad faith). Moreover, in Ali, the court denied the petitioner's requests, which involved virtually identical circumstances and identical arguments raised by the same attorneys who represent Hadwan here. See generally Ali, 2018 WL 2058152.

Certain limited exceptions to the general rule exist. "The Court may, for example, require the agency to submit supplemental materials if the evidentiary record is inadequate, but those materials must merely be explanatory of the original record and should advance no new rationalizations." New York v. Shalala, 1996 WL 87240, at *5 (S.D.N.Y. Feb. 29, 1996). Additionally, a court "may consider evidence outside the administrative record solely as background information when confronted with complex issues or to determine whether the agency considered all relevant factors in making its decision; such materials may not, however, be considered in determining the propriety of the agency's decision." Shalala, 1996 WL 87240, at *5 (citing Envtl. Def. Fund, Inc. v. Costle, 657 F.2d 275, 285 (D.C. Cir. 1981)).

Hadwan has not made a strong showing of bad faith or improper behavior. His evidence of bad faith includes (1) his claim that his statement was coerced; (2) his claim that similar events, such as those described in Ali, happened to other American citizens in Yemen;

6

(3) the State Department's failure to issue a "limited validity" passport to him; and (4) the lack of consular records regarding the incident at the Embassy in Sana'a. (Mot. at 5.) None are persuasive.

First, Ali illustrates the inadequacy of Hadwan's claim of coercion. "That an agency relies upon a document a party believes is inauthentic, improper or fraudulently obtained does not demonstrate that the agency has acted in bad faith. It may be that the agency's reliance on an allegedly coerced confession renders its decision arbitrary and capricious or not based on substantial evidence. . . . Or put differently, by arguing that the agency acted improperly, Ali is arguing about the merits of his APA claim." Ali, 2018 WL 2058152, at *6. Moreover, even if this were not a merits argument, Hadwan offers nothing more than bare assertions that the statement was coerced. And at the revocation hearing, Hadwan's attorney acknowledged that he had no information "from [Hadwan] directly" regarding "what transpired" the day he signed the sworn statement. (Record at US 0107.) The surrounding circumstances alone do not suggest impropriety. Hadwan visited the Embassy to apply for immigration documents for his family—it is reasonable that State Department officials would have questioned him as a result, especially given that, as Hadwan's attorney admitted at the revocation hearing, "there's a lot of fraud in Yemen." (See Record at US 0101.)

On the remaining points, Hadwan again makes unsupported assertions. This Court will not "ascribe . . . nefarious motives to agency action as a general matter." Estate of Landers, 545 F.3d at 113. For instance, while Hadwan is correct that the State Department may issue a limited validity passport in certain circumstances, it is not required to do so. See 22 U.S.C. § 51.60. This Court will not assume an agency acted in bad faith simply because it exercised its discretion. In addition, similar passport revocations do not themselves demonstrate

7

bad faith, especially given the rampant fraud and dangerous conditions in Yemen. (Record at US 0101.) Revocations are likely to happen where the State Department is "investigating, as they very often do." (Record at US 0101 (quoting Hadwan's counsel).) Ultimately, like in Ali, Hadwan "has provided nothing other than conclusory ipse dixit from his lawyer to support his allegations of bad faith conduct. There are no declarations or other evidence proffered to suggest . . . bad faith action by the State Department. Counsel's assertions are insufficient to create the record necessary to infer there was bad faith conduct." Ali, 2018 WL 2058152, at *6.

Finally, Hadwan's argument that the documents relied on by the State Department in Ali demonstrate that the documents were considered by agency decision makers here is meritless, as he presents no evidence that the same documents were "actually" relied on by the State Department in revoking his passport and CRBA. Sebelius, 890 F. Supp. 2d at 309; see Ali, 2018 WL 2058152, at *3 (quoting State Department's certification that the documents "were before" the agency, not that they are always before the agency). Nor does this argument demonstrate bad faith. See Noroozi, 905 F. Supp. 2d at 547 (declining to consider an extra-record cable communication where "the cable does not refer to [petitioner]").

If true, the allegations raised by Hadwan are troubling, but he fails to make the required strong showing of bad faith to warrant extra-record discovery or record supplementation. However, Hadwan is not without remedy, because he may argue on summary judgment that "the agency's reliance on an allegedly coerced confession renders its decision arbitrary and capricious or not based on substantial evidence." Ali, 2018 WL 2058152, at *6. Simply put, "that the ultimate resolution of his case may be in his favor[, though the Court has yet to make such a determination,] does not mean the Court should order discovery." Ali, 2018 WL 2058152, at *6.

CONCLUSION

For the foregoing reasons, Hadwan's motion to supplement the Administrative Record is denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 30. The parties are directed to appear for a status conference on August 15, 2018 at 10:00 a.m.

Dated: July 24, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.