UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------- X
MANSOOR HAMOUD HADWAN,                   :
                                         :
                           Plaintiff,    :
        -against-                        :
                                         :       17-CV-578 (VEC)
UNITED STATES DEPARTMENT OF STATE,       :
UNITED STATES EMBASSY, SANA'A,           :       OPINION AND ORDER
YEMEN,                                   :
                                         :
                           Defendants.   :
-------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/3/2021

VALERIE CAPRONI, United States District Judge:

This case stems from the Department of State's decision to revoke Plaintiff's United States passport and Certificate of Report of Birth Abroad.[1] Plaintiff seeks review of the agency's decision pursuant to the Administrative Procedure Act ("APA"). *See Generally* Third Am. Compl., Dkt. 81 ("TAC"). On December 16, 2019, Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Dkt. 96. On February 13, 2020, rather than oppose Defendants' motion, Plaintiff requested the Court to stay the summary judgment briefing schedule and to allow Plaintiff to move for supplemental discovery pursuant to Federal Rule of Civil Procedure 56(d). Dkt. 101. On February 14, 2020, the Court granted Plaintiff's request, Dkt. 102, and, on July 1, 2020, Plaintiff filed this motion. Dkt. 118. For the following reasons, Plaintiff's motion to supplement the administrative record or otherwise conduct discovery is DENIED.

## BACKGROUND

Plaintiff is a thirty-three-year-old United States citizen who was born in Yemen, but acquired United States citizenship at birth because his father, Hamoud Hadwan, is a naturalized

---

[1] This case was originally assigned to Judge Pauley. Following Judge Pauley's death, the case was reassigned to the Undersigned on July 28, 2021.

United States citizen.² TAC ¶¶ 21-22. Plaintiff received a Certificate of Report of Birth Abroad ("CRBA") and a United States passport in 1998. *Id.* ¶ 22.³

In June 2013, Plaintiff traveled to Yemen to apply for immigration benefits for his family. *Id.* ¶ 25. While at the United States Embassy in Sana'a, Yemen, Special Agent David Howell of the Diplomatic Security Service, a unit within the Department of State, along with an Arabic interpreter, interrogated Plaintiff and allegedly coerced him to sign a statement affirming that Hamound Hadwan is his uncle, not his biological father. *Id.* ¶¶ 28-31; Admin Record, Dkt. 19 at 28. Plaintiff maintains that he did not understand the contents of the statement and only signed it because he was tired, hungry, scared, and believed that refusing to sign it would result in seizure of his passport. TAC ¶ 32. As a result of the signed statement, Embassy officials confiscated Plaintiff's passport. *Id.* ¶ 25.

On March 24, 2014, the Department of State revoked Plaintiff's passport and canceled his CRBA on the grounds that they were fraudulently obtained. *Id.* ¶ 37. The revocation notice stated, *inter alia,* that a "department investigation ha[d] revealed that [Plaintiff's] parents are not Hamoud Abbas Hadwan and Sabrah Saleh Hadwan," and that Plaintiff had "signed a sworn voluntary statement on June 9, 2013, at the U.S. Embassy in Sana'a, admitting to these facts." *Id.* The notice informed Plaintiff of his right to a hearing to contest the revocation and indicated that Plaintiff could submit a written brief in advance of the hearing. *Id.*; Admin. Record at 10.

On August 27, 2014, the Department of State held a revocation hearing in Washington D.C. TAC ¶ 40. Plaintiff could not attend the hearing because he was denied a limited validity

---

²     The Court assumes the truth of the allegations in the complaint for purposes of this opinion.

³     Elsewhere in the TAC Plaintiff alleges that he first received his U.S. passport at age ten on September 20, 2004. TAC ¶ 71. That factual discrepancy is not critical to this motion, but the Court urges Plaintiff's counsel to be more attentive to details in court filings.

passport to travel to the United States.[4] *Id.* Plaintiff's attorney appeared on his behalf and argued that Plaintiff did not sign the statement voluntarily. Admin Record at 107 ("I'm putting into question the allegedly voluntary statement. I say, allegedly, because I don't know if it was voluntary or if he was under duress, under coercion, under fear or if he was just tricked."). Plaintiff's counsel acknowledged, however, that he had not actually spoken to Plaintiff about what transpired at the Embassy and had only communicated with Plaintiff's brother. *Id.* at 107-08. Plaintiff's counsel did not submit a written brief in advance of the hearing, nor did he submit any evidence before or during the hearing. *Id.* at 113. Although Plaintiff's counsel requested an opportunity to submit DNA analysis to prove that Plaintiff is the biological son of Mr. Hadwan, he failed to submit any such evidence after the hearing. *Id.*

On March 31, 2015, the hearing officer sent an "action memo" to the then-Deputy Assistant Secretary for Passport Services, recommending that the Department of State's decision to revoke Plaintiff's passport be upheld on the grounds that it was fraudulently obtained. *Id.* at 131-34. The hearing officer rejected Plaintiff's argument that he had not understood the contents of the statement he signed at the Embassy because the statement expressly provided that it was "read to [Plaintiff] in Arabic and [that Plaintiff] understood the contents completely." *Id*. at 133-34. The hearing officer explained that while "the [plaintiff] may have considered Hamoud Abbas Hadwan 'like a father' and may have made statements in his passport application without

---

[4] Plaintiff is in an unquestionably awful position. He contends that he is a United States citizen by virtue of being the child of a naturalized American citizen. So far as the Court is aware, the Government does not contest that Hamound Hadwan is a naturalized citizen; it only contests that Plaintiff is his son. To the extent there was fraud involved in acquiring a CRBA for Plaintiff, the Plaintiff (who was 10 years old at the time) was not responsible for the fraud.

The Department of State, at a hearing at which it prevented Plaintiff from attending, upheld the decision to revoke his CRBA, thereby depriving Plaintiff of proof that he is, in fact, an American citizen. At the teleconference with the parties on August 30, 2021, the Government confirmed that, at the present moment, Plaintiff lacks any other proof of his United States citizenship. If Plaintiff's rendition of the facts is accurate, that is not an acceptable situation.

intent to commit fraud," his "passport was [nevertheless] issued based on false information." *Id.* at 133. As such, the hearing officer concluded that the Department of State acted properly in revoking Plaintiff's passport and canceling his CRBA pursuant to 22 C.F.R. § 51.62(a)(2) and 8 U.S.C. § 1504. *Id.* at 133-34.

On April 7, 2015, the Deputy Assistant Secretary approved the hearing officer's recommendation to uphold the Department's decision to revoke Plaintiff's passport. *Id.* at 131. On April 9, 2015, the Department of State mailed Plaintiff's counsel a notice of the decision upholding the revocation; the notice informed Plaintiff that the decision was "the final decision of the Department." *Id.* at 130.

On January 25, 2017, Plaintiff initiated this action, seeking judicial review of the agency's decision. Dkt. 1. In October 2018, the Office of the Inspector General for the Department of State released a report titled "Review of Allegations of Improper Passport Seizures at Embassy Sana'a, Yemen." Dkt. 118-2 (the "OIG Report"). The OIG Report detailed shortcomings with the State Department's practice of tracking passport seizures and identified systemic failures to timely notify passport holders of the reasons for revocation and the right to appeal. OIG Report at 3-14. The OIG Report also analyzed 31 specific cases in which the State Department failed to follow notification requirements; Plaintiff's case is Case No. 31 in the OIG Report. *Id.* at 10-16; Pl. Mem. of Law, Dkt. 118-1 at 2.

On December 16, 2019, Defendants filed a motion for summary judgment. Dkt. 96. On July 1, 2020, Plaintiff filed this motion to supplement the administrative record. Dkt. 118.

## DISCUSSION

Under the APA, a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. Specifically, the APA authorizes a reviewing court to set aside agency action that is "arbitrary,

4

capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Karpova v. Snow*, 497 F.3d 262, 267 (2d Cir. 2007). When courts review agency action under the APA, the question presented is purely a legal one, which the district court can resolve on a motion for summary judgment. *City Club of N.Y. v. U.S. Army Corps of Eng'rs*, 246 F. Supp. 3d 860, 864 (S.D.N.Y. 2017); *Ass'n of Proprietary Colls. v. Duncan*, 107 F. Supp. 3d 332, 344 (S.D.N.Y. 2015) ("where a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal, and the entire case on review is a question of law.") (internal quotation omitted).

### I.     Plaintiff is Not Entitled to Supplement the Administrative Record

In reviewing a final agency decision, the court is generally "confined to the administrative record compiled by that agency when it made the decision." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997); *see also Camp v. Pitts,* 411 U.S. 138. 142 (1973) (noting that the "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012) ("It is the province of the agency to compile and submit the administrative record for review by the Court, and common sense dictates that the agency determines what constitutes the whole administrative record ….") (internal citation omitted). Put differently, because the district court in an APA case "sits not as a fact-finder, but as a reviewing court, discovery is generally not permitted," *Almaklani v. Trump*, 444 F. Supp. 3d 425, 430 (E.D.N.Y. 2020), and the Court must simply "apply the appropriate APA standard of review [] to the agency decision based on the record the agency presents to the reviewing court," *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see also Henley v. FDA*, 77 F.3d 616 (2d Cir. 1996) (holding that because the question of

whether an agency policy is arbitrary and capricious is purely a legal issue, fact discovery is not necessary).

"Requests by a party to put materials before the Court that are outside the administrative record filed by the agency fall into two distinct categories." *Sebelius*, 890 F. Supp. 2d at 309. First, a party may supplement the administrative record if the party can show that "materials exist that were actually considered by the agency decision-makers but are not in the record as filed." *Id*. Such a showing requires the party to rebut the "strong presumption" that the agency properly designated the documents to be included in the record. *Brodsky v. U.S. Nuclear Regulatory Comm'n*, 507 F. App'x 48, 52 (2d Cir. 2013) (court must "afford deference to the agency's determination" of the record); *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) ("absent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record."). To overcome that presumption, the party must put forth "concrete evidence" showing that the purportedly excluded materials "were before the agency *decision-maker*." *Sebelius*, 890 F. Supp. 2d at 309 (emphasis in original); *Pac. Shores*, 448 F. Supp. 2d at 6 (holding that a party seeking to supplement the record "must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record); *Sytrene Info. & Research Ctr., Inc. v. Sebelius*, 851 F. Supp. 2d 57, 63 (D.D.C. 2012) (holding that a plaintiff's "conclusory statements" that documents were before the decisionmakers "will not suffice; rather, the plaintiff must identify reasonable, non-speculative grounds for [his] belief that the documents were considered by the agency and not included in the record.") (internal quotation marks omitted). It is not enough for the party to show that the documents were "somewhere within the agency"; the party must show that any purportedly

6

omitted documents were actually "before the agency decision-maker." *Hadwan v. U.S. Dep't of State*, 340 F. Supp. 3d 351, 355 (S.D.N.Y. 2018).

Alternatively, a party may request that the court consider extra-record evidence where "there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers." *Hoffman*, 132 F.3d at 14. Making a showing of bad faith "is no small hurdle," *Ali v. Pompeo*, No. 16-CV-3691, 2018 WL 2058152, at *5 (E.D.N.Y. May 2, 2018), and courts will not "ascribe [] nefarious motives to agency action as a general matter," *Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2008). As such, a "strong showing" cannot be made merely through "naked assertions of bad faith." *Ali*, 2018 WL 2058152, at *5.

The Court must also be mindful that "supplementation of the administrative record is the exception, not the rule." *Pac. Shores,* 448 F. Supp. 2d at 5. When permitted, "discovery should not transform the litigation into one involving all the liberal discovery available under the Federal Rules." *Ali,* 2018 WL 2058152, at *4. Moreover, in the rare circumstances where supplementation of the record is required, it is typically accomplished by remand to the agency, not through court-supervised discovery. *Fla. Power & Light*, 470 U.S. at 744 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

    A.    **The Administrative Record is Complete**

Plaintiff seeks to supplement the administrative record with certain "fundamental documents" referenced in the OIG Report, but the only document that he specifically identifies as having been impermissibly excluded from the record is the initial "passport revocation request issued on November 1, 2013." Pl. Mem. of Law, Dkt. 118-1 at 15-16. The Government argues that Plaintiff has failed to rebut the presumption that the agency properly designated the

administrative record and has not identified any documents that were considered by the final agency decisionmaker but not included in the record. Gov. Opp., Dkt. 119 at 7. The Court agrees.

As noted *supra*, in order to rebut the "strong presumption" that the agency properly designated the administrative record, Plaintiff must put forth "concrete evidence" to show that certain documents were presented to the final agency decisionmaker but were not included in the administrative record. *Pac. Shores*, 448 F. Supp. 2d at 6; *Sebelius*, 890 F. Supp. 2d at 309. Here, Plaintiff has failed to identify any documents that were considered by the Deputy Assistant Secretary of State but not included in the record as filed. *See e.g., Ali,* 2018 WL 2058152, at *10 (rejecting request to supplement the record because plaintiff had "not demonstrated that any of the materials he believes should be in the record were considered by the State Department decisionmakers."); *Hadwan,* 340 F. Supp. 3d at 357 (denying Mr. Hadwan's first request to supplement the record because Plaintiff failed to present any evidence that the documents at issue "were actually relied on by the State Department in revoking his passport and CRBA").

Plaintiff's repeated complaints about the absence of the initial revocation request from the record are misplaced.[5] As noted *supra*, judicial review in an APA case is limited to review of the "final agency action for which there is no other adequate remedy in a court." *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting 5 U.S.C. § 704); *see also Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001) (explaining that the "bite in the phrase 'final action'. . . is not in the word 'action,'. . . [but] rather in the word 'final'"); *In re SEC ex rel. Glotzer,* 374 F.3d 184, 192 (2d Cir. 2004) ("Judicial review under APA § 702 is expressly

---

[5] The Court notes that the Plaintiff's sworn statement, which provided the factual basis for the revocation request, as well as the agency's revocation notice are included in the administrative record. Admin. Record at 3, 28-31.

conditioned, under APA § 704, on the existence of a 'final' agency action."). In this case, as defined by the applicable regulation, the final agency action subject to judicial review is the agency's April 2015 decision upholding the hearing officer's recommendation to revoke Plaintiff's passport.[6] *See* 22 C.F.R. § 51.74 ("After reviewing the record of the hearing and the preliminary findings of fact and recommendations of the hearing officer …, the Deputy Assistant Secretary for Passport Services … will decide whether to uphold the denial or revocation of the passport. . . . *The decision is final* and is not subject to further administrative review.") (emphasis added); *see also 6801 Realty Co., LLC v. U.S. Citizenship & Immigration Servs.*, No. 15-CV-5958, 2016 WL 7017354, at *2 (E.D.N.Y. Nov. 30, 2016) ("One clear indication that an agency has issued its last word on a subject is that no further agency decisionmaking can be expected.") (internal quotation marks omitted). For these reasons, the administrative record submitted to the Court for review need only contain the information and documents that were considered by the final agency decisionmaker. Put differently, the absence from the record of a document relating to the agency's *initial* decision to revoke Plaintiff's passport and cancel his CRBA in 2014 is irrelevant to the Court's review because Plaintiff has offered no evidence that the document was ever presented to or considered by the *final* agency decisionmaker.[7] *Ali,* 2018 WL 2058152, at

---

[6] Plaintiff's argument that the agency's initial decision revoking his passport is a final agency decision subject to judicial review is unpersuasive. *See* Pl. Mem. of Law, Dkt. 118-1 at 7-8. As noted *supra*, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. A "preliminary, procedural, or intermediate agency action or ruling" may also be subject to judicial review if it is "*not directly reviewable*" by the agency. *Id.* (emphasis added). Here, however, because the agency's initial decision to revoke Plaintiff's passport *was* directly reviewable by the hearing officer and the Deputy-Assistant Secretary, the initial decision was not the final agency action; because the initial decision was not the final decision, it is not subject to judicial review. *See Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 172 (2d Cir. 2006) (noting that judicial review under the APA is only available when "the challenged decisions represent final agency action").

As Defendants noted in their opposition brief, if Plaintiff were able to disregard the agency's final decision upholding the hearing officer's recommendation and seek judicial review of the initial decision, the entire revocation hearing and administrative review process would be rendered meaningless. *See* Gov. Opp., Dkt. 119 at 10-11.

[7] To the extent that Plaintiff is arguing that the hearing officer *should* have considered information contained in the initial revocation request or other details of the Department's investigation, Plaintiff may raise that argument

\*10 n.8 (rejecting plaintiff's argument that the administrative record should include documents that were before the "Special Agent, the Vice Counsel, and the Counsel Chief" because plaintiff failed to show that "these individuals were the final agency decisionmakers"); *Sebelius,* 890 F. Supp. 2d at 312 (noting that "for the purpose of judicial review of agency action, deliberative materials antecedent to the agency's decision fall outside the administrative record.").

In sum, Plaintiff has failed to identify any documents that were considered by the final agency decisionmaker but were not included in the record. Accordingly, the administrative record as filed is complete.

### B.     Plaintiff Has Failed to Demonstrate Bad Faith or Improper Behavior

Plaintiff also argues that the OIG Report establishes bad faith justifying the presentation of extra-record evidence. Specifically, Plaintiff argues that, because the OIG Report references documents that are not included in the administrative record, Defendants acted in bad faith in compiling the record. Pl. Mem. of Law, Dkt. 118-1 at 17-18. The Court disagrees.

Plaintiff has offered no evidence to support his conclusory assertion that the failure to include certain documents referenced in the OIG report in the administrative record reflects bad faith or improper behavior by the Agency. *Ali*, 2018 WL 2058152, at \*5 (explaining that the requisite "strong showing" of bad faith will not be made merely through "naked assertions of bad faith."); *Hadwan,* 340 F. Supp. 3d at 357 (rejecting Plaintiff's claim of bad faith because he "provided nothing other than conclusory ipse dixit from his lawyer to support his allegations of bad faith conduct."). Instead, it is entirely plausible that the administrative record does not

---

in opposition to Defendants' motion for summary judgment. Put differently, Plaintiff's arguments that the hearing officer failed to consider certain information and failed to explore further suggestions that the statement from the Plaintiff on which the Department of State relied was coerced may be relevant to whether the agency's decision was arbitrary and capricious, but it is not relevant to a motion to supplement the record. *See Islander E. Pipeline Co., LLC v. McCarthy*, 525 F.3d 141, 150-51 (2d Cir. 2008) (a court "deciding whether agency action is arbitrary and capricious . . . considers [among other things] whether the agency . . . entirely failed to consider an important aspect of the problem[.]").

include certain documents referenced in the OIG Report because those documents were never presented to or considered by the agency decisionmaker. *See Estate of Landers*, 545 F.3d at 113 (courts will not "ascribe . . . nefarious motives to agency action as a general matter."); *Spezzaferro v. Fed. Aviation Admin.,* 807 F.2d 169, 173 (Fed. Cir. 1986) (to overcome the presumption of good faith, "[t]he proof must be almost irrefragable") (internal quotation and citation omitted).

In sum, Plaintiff has failed to show that the administrative record is incomplete, nor has he made any showing of bad faith in connection with the agency's production of the record.[8] Accordingly, Plaintiff's motion to supplement the administrative record is denied.

## II. Plaintiff is Not Entitled to Discovery Pursuant to Rule 56(d)

Federal Rule of Civil Procedure 56(d)(2) provides that if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may . . . allow [the party] time to obtain affidavits or declarations or to take discovery." An affidavit submitted pursuant to Rule 56(d) must include: (i) the nature of the uncompleted discovery; (ii) how the facts sought are reasonably expected to create a genuine issue of material fact; (iii) what efforts the party has made to obtain those facts; and (iv) why those efforts were unsuccessful. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994).

---

[8] Plaintiff makes much of the fact that the hearing officer's decision is a "word for word copy of the State Department's briefs." Pl. Mem. of Law, Dkt. 118-1 at 10. To the extent Plaintiff is arguing that, by relying solely on the State Department's arguments and representations, the agency decisionmaker "relied on factors which Congress has not intended it to consider," such an argument goes to the merits of Defendants' summary judgment motion rather than a motion to supplement the record. *See Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (holding that an agency decision may be found arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."); *Ali*, 2018 WL 2058152, at *6 ("by arguing that the agency acted improperly, [plaintiff] is arguing about the merits of his APA claim.").

As noted *supra,* judicial review in an APA case is confined to the administrative record. Accordingly, under the so-called record rule, the "standard discovery tools of civil litigation—including depositions, interrogatories, and . . . document production of materials that may potentially lead to admissible evidence—do not apply." *Sebelius*, 890 F. Supp. 2d at 312; *Common Sense Salmon Recovery v. Evans*, 217 F. Supp. 2d 17, 20 (D.D.C. 2002) (holding that "because a court's review of an agency's decision is confined to the administrative record . . . courts uniformly have held that discovery typically is not permitted"). In this case, for the reasons stated *supra,* Plaintiff has failed to demonstrate any basis for supplementing the administrative record.[9] As such, Plaintiff's motion for discovery is denied.[10] *Almaklani*, 444 F.

---

[9] During a teleconference with the parties on August 30, 2021, Plaintiff suggested that he was entitled to extra-record discovery to support his claim that Defendants violated his Fifth Amendment due process rights by failing to provide written notice of his passport revocation or a prompt hearing. *See* TAC ¶¶ 83-89. The Court disagrees.

There is no clear consensus among district courts "whether the assertion of constitutional claims takes a case outside the procedural strictures of the APA, including the record review rule." *Chang v. U.S. Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017); *see also Almaklani*, 444 F. Supp. 3d at 432. Nevertheless, this Court agrees that, as a general matter, "to allow broad ranging discovery under Rule 26, beyond the administrative record in every case where a plaintiff alleges a constitutional claim, would be inappropriate and render meaningless the APA's restriction of judicial review to the administrative record." *Almaklani*, 444 F. Supp. 3d at 434; *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 43 (D.D.C. 2018) (noting that "district courts have been hesitant to permit a plaintiff asserting a constitutional challenge to agency action to avoid the APA's bar on extra-record evidence."); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.,* 58 F. Supp. 3d 1191, 1238 (D.N.M. 2014) (holding that to "allow fresh discovery, submission of new evidence and legal arguments" merely because a plaintiff asserted constitutional violations alongside APA claims, would "incentivize every unsuccessful party to agency action to allege . . . constitutional violations" in order to "trade in the APA's restrictive procedures for the more even-handed ones of the Federal Rules of Civil Procedure."); *Harvard Pilgrim Health Care v. Thompson*, 318 F. Supp. 2d 1, 10 (D.R.I. 2004) (denying discovery on constitutional claims and stating that "[t]he APA's restriction of judicial review to the administrative record would be meaningless if any party seeking review based on . . . constitutional deficiencies was entitled to broad-ranging discovery"). Here, for the reasons noted *supra,* Plaintiff has failed to establish a basis for supplementing the record or conducting extra-record discovery. As such, notwithstanding his assertion of constitutional violations, Plaintiff is not entitled to discovery under Rule 56(d). *See Almaklani*, 444 F. Supp. 3d at 434 (rejecting plaintiff's motion for discovery to support his constitutional claims and holding that "the administrative record has been properly designated and the addition of constitutional claims does not alter the sufficiency of the record.").

[10] The Court also notes, as Judge Pauley did in a pre-motion conference with the parties, that Plaintiff has independently failed to satisfy the requirements to obtain supplemental discovery pursuant to Rule 56(d). Specifically, Plaintiff has failed to demonstrate the efforts he made to obtain the documents referenced in the OIG Report and why such efforts were unsuccessful. The OIG Report was published in October 2018, fifteen months before Plaintiff allegedly became aware of its relevance to this case on January 31, 2020. As noted by Judge Pauley,

Supp. 3d at 431 (denying request for discovery because plaintiff could not "overcome the strong presumption of regularity that attaches to the agency's certification of the record," or make a "showing of bad faith.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to supplement the administrative record or otherwise conduct discovery is DENIED.

Defendants may file a renewed motion for summary judgment by **October 15, 2021**. Plaintiff's opposition to Defendants' motion for summary judgment is due **November 19, 2021**. Defendants' reply is due **December 17, 2021.**

The Clerk of Court is directed to close the motions at docket entries 96 and 118.

**SO ORDERED.**

Date:  **September 3, 2021**
       **New York, New York**

                                      **VALERIE CAPRONI**
                                      **United States District Judge**

---

no further facts have come to light since the publishing of the OIG Report, and "any relevance that [Plaintiff] claims it has, was available to [him] on the day the report was published." Pre-motion Conf. Tr., Dkt. 116 at 10:18-10:20.