```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  5/27/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
MANSOOR HAMOUD HADWAN,             :
                                   :
                        Plaintiff, :
                                   :          17-CV-578 (VEC)
            -against-              :
                                   :          OPINION AND ORDER
UNITED STATES DEPARTMENT OF STATE  :
and UNITED STATES EMBASSY, SANA'A, :
YEMEN,                             :
                                   :
                       Defendants. :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

In this Administrative Procedure Act ("APA") case, Plaintiff seeks judicial review of the Department of State's decision to uphold the revocation of Plaintiff's U.S. passport and Consular Report of Birth Abroad ("CRBA"). Plaintiff alleges that, during the revocation process, Defendants violated the APA and Plaintiff's constitutional rights in a variety of ways. *See generally* Third Am. Compl., Dkt. 81. Defendants have moved for summary judgment, *see* Defs. Mem. of Law, Dkt. 138; Plaintiff opposes the motion, *see* Pl. Mem. of Law, Dkt. 141. For the reasons discussed below, Defendants' motion for summary judgment is GRANTED.

## BACKGROUND[1]

Plaintiff, a man born in Yemen, alleges that he acquired U.S. citizenship at birth because his father, Hamoud Hadwan, is a naturalized U.S. citizen. *See* Third Am. Compl. ¶ 21; *see also* Pl. Mem. of Law at 1. On March 10, 1998, when Plaintiff was 10 years old, the Department of State issued a CRBA for Plaintiff in the name of Mansoor Hamoud Hadwan; the certificate

---

[1]   Citations are to the administrative record, *see* Dkt. 19. A "Rule 56.1 statement is not required in a case seeking review of an administrative action under the APA because the case only presents a question of law." *Teleanu v. Koumans*, 480 F. Supp. 3d 567, 575 n.11 (S.D.N.Y. 2020).

stated that his parents were Hamoud Hadwan and Sabrah Saleh Hadwan. *See* Admin. Record, Dkt. 19 at 132. On September 20, 2004, Plaintiff applied for, and received, a U.S. passport using the same name and providing the same names of his parents. *See id.*

On June 9, 2013, however, while at the U.S. Embassy in Sana'a, Yemen, Plaintiff signed a sworn statement before Special Agent David Howell of the Diplomatic Security Service, a unit within the Department of State, in which Plaintiff stated, *inter alia*, that: (1) his "true and correct name is Hadwan Mansour Abbas Hadwan"; (2) his real parents, Mansour Abbas Saleh Hadwan and Nabat Mosed Aljawfi, are Yemeni citizens;[2] (3) Hamoud Abbas Hadwan is his uncle, not his father; and (4) he was documented as his uncle's child "under the assumed/fraudulent name Mansour Hamoud Hadwan." *Id.* at 28–30. The statement further provides: "I asked Special Agent Howell to prepare this document for me, as I do not read or write well in English. This document was read to me in Arabic and I understood its contents completely." *Id.* at 30; *see also id.* at 31 ("I have read this statement, . . . and it is true, accurate, and complete to the best of my knowledge and belief. This statement is made of my own free will and accord without any promise of reward and without threats, force, or coercion used against me."). As a result of Plaintiff's statement, Embassy officials confiscated his passport. *See* Third Am. Compl. ¶ 25.

Approximately nine and a half months later, the Department of State revoked Plaintiff's passport and canceled his CRBA on the grounds that they were fraudulently obtained. Admin. Record at 2–3.[3] The revocation notice stated, *inter alia,* that a "department investigation has revealed that [Plaintiff's] parents are not Hamoud Abbas Hadwan and Sabrah Saleh Hadwan,"

---

[2] Plaintiff attested that his father, Mansour Abbas Saleh Hadwan, is now in the United States as a lawful permanent resident, having entered recently on a petition by Plaintiff's sister. *See* Admin. Record at 28.

[3] As the Court has noted before, *see* Order & Op., Dkt. 134 at 3 n.4, to the extent there was fraud involved in acquiring Plaintiff's CRBA, Plaintiff (who was only 10 years old at the time) was not responsible.

2

and that Plaintiff had "signed a sworn voluntary statement on June 9, 2013, at the U.S. Embassy in Sana'a, admitting to these facts." *Id.* at 3. The notice informed Plaintiff of his right to a hearing to contest the revocation and indicated that Plaintiff could submit a written brief in advance of the hearing. *Id.*[4]

On August 27, 2014, the Department of State held a revocation hearing in Washington D.C. *See id.* at 94–114. Plaintiff could not attend the hearing because he was denied a limited validity passport to travel to the United States. *See id.* at 104:3–05:9; *see also* Third Am. Compl. ¶ 36. Plaintiff's attorney for purposes of the administrative proceedings ("Administrative Counsel") appeared on his behalf and argued that Plaintiff had not voluntarily signed the sworn statement. *See, e.g.*, Admin. Record at 103:17–20 ("That's basically the issue in this case, is a question of whether or not this so-called voluntary statement was voluntarily given and knowingly giving, and I'm putting that into question."). Plaintiff's Administrative Counsel argued that: (1) Plaintiff does not read or write well in English, so there is a "major question" whether Plaintiff knew the content of what he signed; (2) there is no evidence that Plaintiff actually understood what he signed because there is no affidavit from the Arabic translator or from Agent Howell; and (3) there may have been confusion during the interview about Plaintiff's family names or Plaintiff's description of his familial relationships. *See id.* at 99:20–100:18, 102:7–03:2, 107:1–6. At the same time, Plaintiff's Administrative Counsel acknowledged that he had not actually spoken to Plaintiff about what transpired at the Embassy and had only communicated with Plaintiff's brothers. *See id.* at 103:3–16, 107:9–08:5; *see also id.* at 107:6–8

---

[4] The notice also made clear that the hearing would address "only the evidence presented upon which the CRBA and passport were erroneously issued, not [Plaintiff's] citizenship status." Admin. Record at 3; *see also id.* at 9 ("The *only* issue for consideration and decision will be whether or not the Department satisfied the requirements or conditions of the applicable regulations cited as a basis for its adverse action, *not the citizenship status of your client*.") (emphasis in original). Accordingly, that is the sole focus of this Court as well.

("I say, allegedly, because I don't know if it was voluntary"). Plaintiff's Administrative Counsel did not submit a written brief in advance of the hearing, nor did he submit any evidence before or during the hearing. *See id.* at 113:8–11. Further, although Administrative Counsel requested an opportunity to submit a DNA sample to prove that Plaintiff is the biological son of Hamoud Abbas Hadwan, *see, e.g., id.* at 113:11–13, he failed to submit any such evidence during or after the hearing.

On March 31, 2015, the hearing officer sent an "action memo" to the then-Deputy Assistant Secretary for Passport Services, recommending that the prior decision to revoke Plaintiff's passport and cancel his CRBA be upheld because both documents were fraudulently obtained. *See id.* at 131–34. The hearing officer rejected Plaintiff's argument that he had not understood the contents of the statement he signed at the Embassy because the statement, which "bears Mr. Hadwan's signature and initials," expressly provided that it had been "read to [Plaintiff] in Arabic and [that Plaintiff] understood the contents completely." *Id.* at 133. The hearing officer further noted that: (1) Plaintiff did not submit any additional evidence or statement; (2) Plaintiff's Administrative Counsel did not have even basic biographical information about his client; and (3) although Plaintiff's Administrative Counsel offered to obtain a DNA sample from his client, "none was presented at the hearing."[5] *Id.* Finally, the hearing officer explained that, although "the [Plaintiff] may have considered Hamoud Abbas

---

[5] Plaintiff argues that the decision failed to acknowledge that Plaintiff's Administrative Counsel had requested but was not given permission to submit DNA evidence, *see* Pl. Mem. of Law at 9; at the end of the hearing, in response to Plaintiff's request to submit DNA evidence, the hearing officer stated, "I'd like not to give you a definitive answer because I'm not sure. There may be ways for [DNA evidence] to be useful without it necessarily being part of this process," Admin. Record at 116:18–21. The hearing officer's comment makes clear that she envisioned potentially resolving the case without requiring DNA evidence, as she ultimately did. That does not change or undermine the officer's finding that Plaintiff did not provide DNA evidence (or any other evidence) before or at the hearing. Further, Plaintiff, to date, still has not submitted DNA evidence, even though Defendants have made clear that they "remain[] willing to facilitate and review a properly submitted DNA sample at any time." Defs. Mem. of Law at 9 n.7.

4

Hadwan 'like a father' and may have made statements in his passport application without intent to commit fraud," his "passport was [nevertheless] issued based on false information." *Id.* Accordingly, the hearing officer concluded that the Department of State acted properly in revoking Plaintiff's passport and canceling his CRBA pursuant to 22 C.F.R. § 51.62(a)(2)[6] and 8 U.S.C. § 1504.[7] *Id.* at 134; *see also id.* (noting that Plaintiff's "submission of false identity documents with his passport application is also a violation of 22 C.F.R. § 51.20").

On April 7, 2015, the Deputy Assistant Secretary approved the hearing officer's recommendation to uphold the revocation of Plaintiff's passport and CRBA. *See id.* at 131. On April 9, 2015, the Department of State mailed Plaintiff's Administrative Counsel a notice of the decision upholding the revocation; the notice informed Plaintiff that the decision was "the final decision of the Department." *Id.* at 130.

On January 25, 2017, Plaintiff, represented by new counsel, initiated this action, seeking judicial review of the agency's decision. *See* Compl., Dkt. 1. On October 15, 2021, Defendants filed this motion for summary judgment, *see* Mot. for Summ. J., Dkt. 137, which Plaintiff has opposed, *see* Pl. Mem. of Law.

---

[6]     22 C.F.R. § 51.62(a)(2) provides that a passport may be revoked when it has been "illegally, fraudulently or erroneously obtained" or "was created through illegality or fraud practiced upon the Department."

[7]     8 U.S.C. § 1504 provides that the Secretary of State may cancel a passport or CRBA "if it appears that such document was illegally, fraudulently, or erroneously obtained from, or was created through illegality or fraud practiced upon, the Secretary."

## DISCUSSION[8]

Under the APA, a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. Specifically, the APA authorizes a reviewing court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A); *see also Karpova v. Snow*, 497 F.3d 262, 267 (2d Cir. 2007). An agency's decision is arbitrary and capricious if the agency "relied on factors which Congress [did] not intend[] it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A reviewing court may also set aside an agency's decision as arbitrary and capricious if the agency failed to "set out a satisfactory explanation including a rational connection between the facts found and the choice made." *Karpova*, 497 F.3d at 268.

When courts review agency action under the APA, the question presented is purely a legal one, which the district court can resolve on a motion for summary judgment. *See City Club of N.Y. v. U.S. Army Corps of Eng'rs*, 246 F. Supp. 3d 860, 864 (S.D.N.Y. 2017); *Ass'n of Proprietary Colls. v. Duncan*, 107 F. Supp. 3d 332, 344 (S.D.N.Y. 2015) ("where . . . a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal, and the entire case on review is a question of law") (internal quotation marks omitted).

---

[8] The Court previously dismissed Plaintiff's seventh cause of action. *See generally* Op. & Order, Dkt. 93. Plaintiff has also expressly abandoned his first two causes of action, regarding: (1) Defendants' interpretation and application of 8 U.S.C. § 1504; and (2) Defendants' application of the "clear and convincing" evidence standard at Plaintiff's hearing. *See* Pl. Mem. of Law at 28 n.7; *see also* Third Am. Compl. ¶¶ 66–79. Accordingly, both claims are dismissed. This leaves at issue only Counts Three, Four, Five, Six, and Eight.

Judicial review of agency action under the arbitrary and capricious standard "is necessarily narrow," and the reviewing court may not "substitute its judgment for that of the agency." *Islander E. Pipeline Co., LLC, v. McCarthy*, 525 F.3d 141, 150 (2d Cir. 2008); *see also Fed. Power Comm'n v. Texaco, Inc.*, 417 U.S. 380, 397 (1974) ("[A]n agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself.") (internal quotation marks omitted); *Zhang v. U.S. Dep't of Justice*, 362 F.3d 155, 159 (2d Cir. 2004) ("[R]eview will necessarily 'be confined to the reasoning of the [agency].'") (citation omitted). The court is also "confined to the administrative record compiled by that agency when it made the decision." *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) (the "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012) ("It is the province of the agency to compile and submit the administrative record for review by the Court, and common sense dictates that the agency determines what constitutes the whole administrative record . . .") (internal citation omitted).

Defendants argue that: (1) most of the claims in Plaintiff's Third Amended Complaint are "beyond the scope of this case because they were not presented to the agency during the revocation hearing";[9] and (2) even if they were within the scope of the case, all of Plaintiff's claims are meritless. Defs. Mem. of Law at 12–13; *see also id.* at 1 ("In short, the plaintiff's passport was validly revoked on the ground that it was obtained 'illegally, fraudulently, or

---

[9] Only Counts Three and Five, Defendants argue, were not waived or forfeited. Defs. Mem. of Law at 15 n.12.

erroneously,' because the plaintiff admitted, in a sworn statement, that the identity he used in his application, along with the identity of his biological parents, was fraudulent.").

## I. Count Three: Defendants' Reliance on Plaintiff's Sworn Statement

Count Three alleges that Defendants violated the Fifth Amendment by "rel[ying] on the statement illegally obtained at the Embassy in Sana'a on or about June 9, 2013 to uphold the revocation of Plaintiff's passport, even though the administrative record established that the statement was coerced, involuntary, and not the intelligent product of a free mind or a free will." Third Am. Compl. ¶ 81.

Defendants argue that Plaintiff's claim fails because the administrative record does not establish that Plaintiff's statement was coerced or involuntary; instead, Defendants argue, "[t]he record plainly demonstrates that the plaintiff, through his [Administrative Counsel] . . . , submitted *no evidence* whatsoever" before, during, or after the revocation hearing. Defs. Mem. of Law at 19 (emphasis in original). Defendants further stress that, despite questioning the voluntariness of Plaintiff's statement, Plaintiff's Administrative Counsel admitted that he did not actually know whether the statement was voluntary. See id. at 20 (citing Admin. Record at 107). Administrative Counsel, by his own admission, never spoke directly with Plaintiff about what happened; the only information he had was second-hand information from Plaintiff's brothers. See id. (citing Admin. Record at 107–08). Thus, Defendants argue, "[w]ithout any evidence to support the plaintiff's [Administrative Counsel's] suggestion (of which he himself was not even certain)," the Department of State did not err in declining to credit it. Id. (citation omitted). Defendants further argue that Plaintiff's sworn statement "bears all the hallmarks of voluntariness": (1) Plaintiff's initials appear on every page and his signature appears on the last page; (2) the statement includes "extensive details" about the alleged fraud at issue; (3) and the

8

statement acknowledges that it "was read to [Plaintiff] in Arabic and [Plaintiff] understood its contents completely." *Id.* (citing Admin. Record at 131–34).

Plaintiff asserts that his Administrative Counsel argued that Plaintiff's statement was made involuntarily. *See* Pl. Mem. of Law at 7. He complains, however, that Defendants denied him the opportunity to obtain evidence, even though the Government was well aware of the impediments to gathering evidence in Yemen, given the ongoing conflict in that nation. *See* Pl. Mem. of Law at 15.[10] Plaintiff further argues that "the Government's capacity to rely on this otherwise unconstitutional statement" was only possible because the Government "trapp[ed]" Plaintiff outside the United States — rendering him unable to attend his own hearing — by confiscating his passport ten months[11] before notifying him that he had a right to appeal the revocation. *See id.* at 15.[12] Finally, Plaintiff argues that, "given the paucity of evidence in support of [Defendants'] case; the inherent contradictions that exist on the face of the statement itself"[13] and "the 'strikingly similar' conduct in other cases taking place at the same time, at the

---

[10] Plaintiff argues that it was arbitrary and capricious for the Department of State to deny Plaintiff's Administrative Counsel's request for a continuance of the revocation hearing based on an inability to obtain information. *See* Pl. Mem. of Law at 19–22. The Court will not consider this argument, however, as Plaintiff has never asserted it before now, including in his Third Amended Complaint, and "it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion." *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001); *see also, e.g., Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (agreeing that claims "need not be considered" when the "plaintiff raised them for the first time in opposition to summary judgment") (citations omitted); *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint.") (citation omitted). While Plaintiff claims that his Administrative Counsel did raise this argument, *see* Pl. Mem. of Law at 25 (citing Admin. Record at 101:12–21), it is clear from the passage Plaintiff cites that his Administrative Counsel was concerned not with the denial of his request for an adjournment but with the Department of State's failure to perform a DNA test.

[11] Plaintiff refers inconsistently to a ten- or eleven-month delay in notice when referring to the nine-and-a-half-month period between the confiscation of Plaintiff's passport on June 9, 2013 and its revocation on March 24, 2014. *Compare* Pl. Mem. of Law at 15 *with* Third Am. Compl. ¶ 85.

[12] *See infra* at footnote 18.

[13] Plaintiff asserts that his sworn statement is "facially inconsisten[t]" because: (1) the name claimed in the statement and the name signed do not match; (2) the initials on each page and the name signed on the last page of the statement do not match; (3) it strains credulity that Plaintiff would state that he was born "on/about 1986" but knew his brother-in-law's full birthday; (4) the statement is "inherently contradictory" about whether it was read to

9

same place and involving the same people,"[14] Defendants "grossly prejudiced" Plaintiff's "capacity to meaningfully rebut the allegations t[hat] have violated [his] due process." *Id.* at 15–16.

The problem for Plaintiff is that only one of his arguments was made during the administrative hearing. This is fatal to the arguments not previously made because the "focal point for judicial review [is] the administrative record already in existence, not some new record made initially in the reviewing court." *Camp*, 411 U.S. at 142; *see also Constitution Pipeline Co., LLC v. N.Y. State Dep't of Env't Conservation*, 868 F.3d 87, 102 (2d Cir. 2017) ("Under the arbitrary-and-capricious standard, '[a] reviewing court may not itself weigh the evidence or substitute its judgment for that of the agency.'") (citation omitted); *Ry. Lab. Execs.' Ass'n v. United States*, 791 F.2d 994, 1000 (2d Cir. 1986) ("It is beyond cavil that a petitioner's failure to assert an argument before an administrative agency bars it from asserting that argument for the first time before a reviewing court.").

The only argument that Plaintiff's Administrative Counsel made during Plaintiff's revocation hearing was that there were no affidavits from the translator or Agent Howell, thereby calling into question whether Plaintiff understood the contents of the statement he signed. *See*

---

Plaintiff or he read it himself; (5) there are no affidavits from the translator or the agent who conducted the interview; and (6) the statement was produced and typed, and Defendants cannot confirm who created it. *See* Pl. Mem. of Law at 23–27.

[14] Plaintiff argues that the agent and translator who interrogated Plaintiff have, on multiple occasions, obtained "very similar statements from visitors to the United States Embassy in Sana'a, Yemen" that were then found to be involuntary. *See* Pl. Mem. of Law at 23 (citing *Alzokari v. Pompeo*, 973 F.3d 65, 71 n.11 (2d Cir. 2020) (collecting cases)). But the cases on which Plaintiff relies are inapposite, as none of them actually held that statements obtained by the agent and translator were involuntary. *See, e.g., Alzokari*, 973 F.3d at 71 ("even accepting as true the March 2013 admissions regarding Alzokari's identity—and ignoring the dubious circumstances surrounding his 'statement' . . ."); *Omar v. Tillerson*, No. 15-CV-1760, 2017 WL 5751314, at *4 (N.D. Cal. Nov. 28, 2017) (finding it "unnecessary" to determine the voluntariness of the plaintiff's statement because "even if the Court accepts Plaintiff's Statement and credits the contents as true, . . . the government has failed to show that there is any legal basis to revoke Plaintiff's passport"). Even if Plaintiff had established a pattern of conduct by the agent and translator, however, it still would not, without more, establish wrongdoing in this particular case.

Admin. Record at 100:4–18, 107:1–08:5.[15] While the agency decision did not address the lack of affidavits directly,[16] it did explicitly reject the argument that Plaintiff did not understand the contents of the statement he signed, because the statement itself said that it was read to him in Arabic and Plaintiff attested that he "understood the contents completely." *See id.* at 133. The decision further noted that Plaintiff did not submit any evidence or statement to support his arguments. *See id.* Against this reasoning, Plaintiff has offered no evidence that the lack of affidavits, or anything else in the administrative record, renders Defendants' decision implausible or contrary to the evidence, or that the agency "failed to consider an important aspect of the problem." *See Motor Vehicle Mfrs.*, 463 U.S. at 43; *Islander E. Pipeline*, 525 F.3d at 150–51. The sad truth is that Plaintiff's Administrative Counsel argued a limited number of unsupported reasons why Plaintiff's statement was involuntary, the agency rejected them, and nothing now compels a different result.[17]

Accordingly, Defendants are entitled to summary judgment on Plaintiff's third cause of action, as Plaintiff has not demonstrated that Defendants' reliance on Plaintiff's sworn statement was arbitrary and capricious.

---

[15] The only other grounds on which Plaintiff's Administrative Counsel questioned the validity of Plaintiff's sworn statement were that: (1) Plaintiff does not read or write well in English, so it is questionable whether he understood what he signed; and (2) there may have been confusion during the interview about Plaintiff's family names or Plaintiff's description of his familial relationships. *See* Admin. Record at 99:20–100:4, 102:7–03:2.

[16] *See Ali v. Pompeo*, No. 16-CV-3691, 2020 WL 2312626, at *10 (E.D.N.Y. Apr. 30, 2020) (an agency decision cannot be affirmed or denied "'based on evidence that may appear in the record but that was not relied on' because a court 'cannot know how' the hearing officer 'would have viewed evidence she did not analyze'") (quoting *Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 400 (2d Cir. 2005)).

[17] That said, it is *clearly* better practice for the translator to provide his or her own sworn statement attesting that he or she read the entire signed statement to the signatory in x language and that the signatory confirmed to the translator that he or she understood the contents of the statement being signed. Without such an affidavit, the administrative judge is relying on an English language statement with no sworn assurance that the translator read the full statement to the signatory in Arabic and, when doing so, fairly and accurately translated the contents of the English language statement into Arabic.

## II. Count Four: Defendants Provided Written Notice and a Prompt Hearing

Count Four alleges that "[b]y failing to provide Plaintiff with written notice or an opportunity to contest the deprivation in a hearing for eleven months," Defendants violated: (1) the Fifth Amendment's due process clause, "which requires the opportunity to be heard at a meaningful time and in a meaningful manner"; and (2) Plaintiff's rights under 8 U.S.C. § 1504(a), "which . . . requires Defendants and their agents to provide a written notice explaining the reasons for the revocation of a U.S. passport and offering a prompt post-revocation hearing." Third Am. Compl. ¶¶ 85–86.

Defendants argue that they are entitled to summary judgment on this claim because Defendants unquestionably provided both notice of Plaintiff's passport revocation and a prompt hearing thereafter. *See* Defs. Mem. of Law at 21. As Defendants summarize the timeline: (1) Defendants revoked Plaintiff's passport on March 24, 2014; (2) Plaintiff received written notice of that determination, with a statement of reasons, the same day; (3) on April 21, 2014, Plaintiff requested a hearing; (4) Defendants acknowledged receipt of Plaintiff's request on May 29, 2014, and scheduled Plaintiff's revocation hearing for July 2, 2014; and (5) at Plaintiff's Administrative Counsel's request, the hearing was rescheduled and held on August 27, 2014, just over five months after the initial revocation. *See id.* (citing Admin. Record 2–4, 9–10, 51, 58, 66, 89, 94–115). Based on this, Defendants argue, the notice and hearing Plaintiff received were sufficient to satisfy both constitutional and APA requirements. *See id.* at 22. Defendants further argue that Plaintiff's attempt to premise his claim on the time between the confiscation of his passport in June 2013 and its revocation on March 24, 2014, is without merit because neither 8 U.S.C. § 1504 nor 22 C.F.R. § 51 requires that a revocation decision be made within a particular time after a passport is confiscated. *See id.* at 21–22 ("These provisions require only that once

12

the formal revocation decision is made, the individual be given written notice of it, 'together with the procedures for seeking a prompt post-cancellation hearing.'") (quoting 8 U.S.C. § 1504). Finally, Defendants argue that Plaintiff's Administrative Counsel never contested the revocation on these grounds, "nor did he make any argument concerning these points at all"; accordingly, Defendants argue, "like most of the arguments in the third amended complaint, . . . the plaintiff's contention is outside the scope of this case." *Id.* at 22 n.17.

Plaintiff argues that, at the time his passport was confiscated, Defendants' own regulation required them to "notify in writing any person whose . . . passport has been revoked" and "set forth specific reasons for the . . . revocation, and, if applicable, the procedures for review." Pl. Mem. of Law at 13–14 (quoting 22 C.F.R. § 51.65(a)). Plaintiff alleges that Defendants failed to provide the required written notice of revocation when they confiscated Plaintiff's passport, instead waiting ten months. *Id.* at 16. This lack of timely notice, Plaintiff argues, prevented him from participating in his revocation hearing or providing a written affidavit as evidence. *See id.* at 16–18.

Here again, however, Plaintiff is raising an argument that he did not make during the administrative process. Although Plaintiff's Administrative Counsel knew that Plaintiff's passport had been confiscated prior to its revocation (because Plaintiff's lack of a passport prevented him from attending the hearing), he did not raise this issue to the hearing officer.[18] Instead, Administrative Counsel argued that "basically the issue in this case" is whether Plaintiff's statement was voluntary, *see* Admin. Record at 103:17–20, and did not present any

---

[18] Administrative Counsel remarked simply: "[Plaintiff]'s still in Yemen; he can't come to the United States. It's interesting, I had another case, very similar, and . . . I noted my objections and the consulate actually issued a single-use passport to that gentleman and he came to the United States." Admin. Record at 104:11–16. Plaintiff's Administrative Counsel acknowledged that there was a "big difference", however, in that his other client, unlike Plaintiff, was a naturalized citizen. *See id.* at 105:3–9. That is the closest Administrative Counsel came to contesting the delay between the confiscation and revocation of Plaintiff's passport.

13

evidence or arguments regarding other potential administrative or constitutional deficiencies. Accordingly, it is improper for Plaintiff to do so now. *See, e.g.*, *Nat'l Audubon Soc.*, 132 F.3d at 14 (the court is "confined to the administrative record compiled by that agency when it made the decision") (citation omitted); *see also Zhang*, 362 F.3d at 159 ("review will necessarily 'be confined to the reasoning of the [agency]'") (citation omitted); *N.Y. v. U.S. Dep't of Health & Human Servs.*, 414 F. Supp. 3d 475, 517 (S.D.N.Y. 2019) (the district court "determine[s] whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did") (internal quotation marks and citation omitted). Defendants are thus entitled to summary judgment on Plaintiff's fourth cause of action.

### III. Count Five: Support in the Record for Defendants' Conclusions

Count Five alleges that "Defendants' conclusions were arbitrary and capricious, based on a clear error of judgment and a failure to consider the relevant factors, contrary to the evidence before Defendants, based on factors that Congress did not intend Defendants to consider, and were not based on a rational connection between the facts found and the conclusions made." Third Am. Compl. ¶ 91.

Defendants argue that Plaintiff "makes no effort to articulate any cognizable theory on this claim or discuss any facts related to this claim—let alone identify the conclusions he claims to be unsupported by the record—and thus the Court should reject this count for failure to state a claim." Defs. Mem. of Law at 23 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* Defs. Reply Mem. of Law, Dkt. 144 at 3 ("Count Five . . . does not actually present a distinct claim. Rather, it consists only of conclusory statements about APA review that are untethered to any specific facts.") (citation omitted).[19]

---

[19] Defendants further assert that Plaintiff has "arguably" abandoned this claim, because he failed to respond to Defendants' arguments about its conclusory nature. *See* Defs. Reply Mem. of Law at 3.

14

"Where, as here, defendants argue that they are entitled to summary judgment because a claim is insufficiently pled, courts evaluate the motion under the Rule 12(b)(6) standard." *Myers v. Moore*, 326 F.R.D. 50, 59 (S.D.N.Y. 2018) (citation omitted); *see also Schwartz v. Compaignie General Transatlantique*, 405 F.2d 270, 273–74 (2d Cir. 1968) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon [a] motion for summary judgment."); *Scafe v. Pataki*, No. 06-CV-6051, 2009 WL 2707317, at *6 (E.D.N.Y. Aug. 26, 2009) ("A court may convert a motion for summary judgment into a [Rule] 12(b)(6) motion to dismiss a complaint for failure to state a claim without notice to either party.") (citing *Katz v. Molic*, 128 F.R.D. 35, 37–38 (S.D.N.Y. 1989)).

To survive under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted). The Court is not required, however, "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Plaintiff's fifth cause of action fails to state a claim because it is nothing more than a restatement of the legal standard governing APA review. *See* 5 U.S.C. § 706(2)(A) (a reviewing court may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); *see also Motor Vehicle Mfrs.*, 464 U.S. at 43 (an agency's decision is arbitrary and capricious, *inter alia*, if the agency "relied on factors which Congress [did] not intend[ ] it to consider . . . [or] offered an explanation for its decision that runs

15

counter to the evidence before the agency"). Plaintiff does not allege a specific APA violation by Defendants, nor does he identify which of Defendants' conclusions were arbitrary and capricious. Without more, this is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 ("a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" will not suffice) (quoting *Twombly*, 550 U.S. 544 at 555, 557).

Accordingly, Plaintiff's fifth cause of action is dismissed.

## IV. Count Six: Defendants' Application of APA Rules of Adjudication to Plaintiff's Passport Revocation Hearing

Count Six alleges that Defendants did not follow the APA rules of adjudication applicable to passport revocation hearings. *See* Third Am. Compl. ¶¶ 96–97. This failure to follow APA rules of adjudication, Plaintiff argues, caused him to suffer prejudicial error. *Id.* ¶ 98.

Defendants argue that Plaintiff asserts this claim "in conclusory fashion" but "provides no support or authority for his conclusion that the 'APA rules of adjudication' apply to passport revocation hearings." Defs. Mem. of Law at 25 (citing Third Am. Compl. ¶¶ 95–98). Defendants further argue that, "[a]bsent a requirement in the statute, the APA's formal hearing requirements do not apply to all agency hearings," and passport revocation hearings "are not required to be formal agency adjudications, a[s] Congress has never made the APA adjudication requirements applicable to them." *Id.* (citing 8 U.S.C. § 1504; 22 C.F.R. § 51.71(e)); *see also id.* (noting that the requirements at 22 C.F.R. § 51.70 *et seq.* are "all the process that was due to the plaintiff, under the APA or otherwise.").

Plaintiff has not opposed Defendants' arguments. *See generally* Pl. Mem. of Law. Accordingly, this claim has been abandoned and is, therefore, dismissed with prejudice. *See Malik v. City of N.Y.*, 841 F. App'x 281, 283–84 (2d Cir. 2021) ("'[w]hen a party fails adequately

16

to present arguments' in a brief, a court may properly 'consider those arguments abandoned'" and, accordingly, dismissal of corresponding claims is proper) (quoting *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004)).

### V. Count Eight: Declaratory Judgment Act

Finally, Plaintiff has brought a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, requesting the Court to issue a declaration that "Defendants have severally and jointly failed to lawfully discharge their mandated official duties." Third Am. Compl. ¶ 107. Defendants argue that Plaintiff's claim "does not present an actual challenge to the agency action." *See* Defs. Mem. of Law at 10 n.8 (citing *Ahmed v. Cissna*, 327 F. Supp. 3d 650, 672 (S.D.N.Y. 2018), *aff'd sub nom. Ahmed v. Cuccinelli*, 729 F. App'x 908 (2d Cir. 2020)).

"While the Declaratory Judgment Act provides an additional 'remedial arrow in the district court's quiver' it is not a source of substantive rights.'" *Cissna*, 327 F. Supp. 3d at 672 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 431 (S.D.N.Y. 2002)). Nor does the statute impose any duty on the Court to grant this remedy. *Id.* Plaintiff has not provided any basis for the Court to issue the requested declaration, as he has not proved any substantive violation by Defendants. Accordingly, Plaintiff's claim under the Declaratory Judgment Act is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. Plaintiff has impermissibly premised some of his claims on new arguments not raised during the administrative process and has abandoned other claims, both explicitly and by failing to respond to Defendants' arguments. In sum, Plaintiff has offered no evidence to convince the Court that Defendants' revocation of Plaintiff's passport and CRBA was arbitrary and capricious. That

said, the Court takes the Government at its word that it will consider, if submitted, DNA evidence that proves Plaintiff is actually the child of Hamoud Hadwan and is, therefore, entitled to a United States passport.

    The Clerk of Court is respectfully directed to close the open motion at docket entry 137 and to terminate this case.

**SO ORDERED.**

Date: May 27, 2022
New York, NY

                          **VALERIE CAPRONI**
                          **United States District Judge**